IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GEORGE HOLTZ,                           )
                                        )
                Plaintiff,              )
                                        )
         v.                             )   1:04CV00827
                                        )
JEFFERSON SMURFIT CORPORATION           )
(U.S.) dba Smurfit Stone                )
Container Corporation,                  )
dba Stone Container Corporation,        )
                                        )
                Defendant.              )

**O R D E R**

Plaintiff filed this lawsuit against his former employer alleging that he was illegally transferred and terminated from employment as a result of age discrimination. The defendant is an international corporation which divides its operation into multiple regions and facilities. Plaintiff was plant manager of the Greensboro, North Carolina, facility. The complaint alleges that sometime in May 2003, an order was processed incorrectly from the Greensboro facility and defendant sustained approximately $240,000.00 in loss. This loss was not mentioned, but plaintiff was informed that he was failing to close orders and, therefore, could either resign or take a new temporary position. Plaintiff contends another person in the Greensboro facility was responsible for closing orders and, further, that other managers who had sustained losses were placed in permanent positions following poor performances.

Plaintiff filed Requests for Admission, Interrogatories, and a Request for Production of Documents which essentially directed

defendant to identify all plant managers who had suffered losses in excess of $100,000.00 since January 1, 2000, the plant, the loss, and any disciplinary action taken.  Defendant initially refused to answer that interrogatory, but eventually did respond by providing plaintiff with monthly income statements for the years 2002 through 2004 at the folding carton plants within the Central Region where plaintiff was employed.  Notwithstanding its having provided this information, defendant maintains that the full information sought is beyond the scope of discovery and that to produce it in the form plaintiff seeks would be unduly burdensome.

Plaintiff has filed a motion to compel the discovery. Defendant has filed a motion for a protective order pursuant to Fed. R. Civ. P. 26(c)(1) that discovery not be had.  In this case, the decision on the motion to compel will provide an answer to the motion for a protective order.

Plaintiff claims that he needs to have the information in order find out the true reason why he was discharged.  Plaintiff appears to maintain that he was actually discharged because of the big loss and that the allegation of failing to close orders was a pretext. He cites this Court's decision in <u>Hinton v. Conner</u>, 225 F.R.D. 513, 515 (M.D.N.C. 2005), wherein the Court stated:  "[W]hen the issue in a case involves discovering the true reason for terminating an employee, the use of comparison evidence can be relevant, if not critical to a plaintiff's cause."  For this reason, plaintiff argues that he needs to have the information concerning whether other individuals were disciplined when a loss

-2-

occurred at their plant. Thus, it is clear that he is asserting a case of differential or disparate discipline.

Defendant resists the discovery for several reasons. First, defendant states that it does not compile financial records which isolate single event losses in excess of $100,000.00. Plaintiff has done nothing to cast doubt on that assertion. Moreover, plaintiff now has monthly statements for some of the years in question, and has not shown the Court why that information is inadequate.

Second, defendant contends that extraction of such specific information for the eighteen facilities within the United States over a 5½-year period would be extremely time consuming. Nothing else appearing, the Court would agree. Plaintiff does not show that the appropriate area for comparing employment actions taken against managers is the entire United States, as opposed to the division wherein he operated. Nor has plaintiff provided information concerning which supervisors make such decisions in order for the Court to determine what unit would be an appropriate unit for comparison.

Third, defendant points out that the $100,000.00 figure is absolutely arbitrary and has no relationship to the $240,000.00 loss. With this, the Court must also agree. Nevertheless, merely amending the discovery request to seek higher loss amounts or restricting documents sought would not obviate the central problem that the information sought appears to be irrelevant. The Court will now turn to this overriding issue.

The basic flaw with the discovery request is that plaintiff fails to show he was disciplined because of the large loss in his district. This is not a case where the employer has given different reasons for the adverse employment action. Plaintiff reaffirmed in his deposition that the reason given for his dismissal was that he did not close job tickets and this is the same reason defendant gives now. The premise upon which plaintiff bases his request for the discovery results in plaintiff setting up a strawman by claiming that he was discharged because his plant suffered a large financial loss, and then showing that he was disparately disciplined for incurring such a loss. Plaintiff may not create the grounds he believes should have been used or which he believes were secretly used for his discipline and then show those reasons were fallacious. Rather, the employer is entitled to take disciplinary action on the grounds it chooses to select. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005)(plaintiff cannot select the criteria which she wishes to use for judging her promotion). Thus, plaintiff's focus on the single-event financial loss of whatever amount is simply irrelevant to this case. The defendant has staked out its position that plaintiff was disciplined for not closing job tickets. Plaintiff must show that reason is pretextual, not some "secret" or "imagined" reason.

This case demonstrates the need to keep the McDonnell Douglas test within bounds. That test, first formulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973), was one of judicial creation as an attempt to "sharpen the inquiry into the elusive factual question of intentional discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n.8, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The initial presentation of evidence necessary to establish a prima facie case for discrimination is not difficult. It, nevertheless, results in the creation of a legally mandated rebuttable presumption which requires an employer to present legitimate, non-discriminatory reasons for its actions. Id., 450 U.S. at 245 n.6. However, it must be kept in mind that the test is no way an empirical one, but rather a legal fiction created in the hopes that it might assist in revealing motive by requiring an employer to provide reasons for taking the adverse employment action. If not carefully constrained, such a fiction can take on a life of its own as if it actually were an accurate test of motive as opposed to a contrivance which, hopefully, sheds light on, but not necessarily will reveal, true motive.[1]

The danger of not recognizing the limited usefulness of the McDonnell Douglas test is demonstrated in the Burdine case itself. The Supreme Court had to reject attempts to "fine tune" the test which would have required the employer to show the person hired, retained, promoted, etc., was better qualified than the person in the "protected" group who was rejected. This supplement would have

---

[1]The fact that discovery reveals, for example, that a person in a protected group was more severely disciplined than others, in no way conclusively shows that the employer actually knew this and acted on the knowledge at the time the decision was made.

-5-

transformed the McDonnell Douglas test into one placing the burden on the employer to show its actions were in no way discriminatory. Burdine, 450 U.S. at 259. The attempted enhancement was, at best, unsuitable as a means of discovering discriminatory motive. Instead of discovering motive, the court would focus on guessing which of the employees was the best candidate for the job. However, what constitutes best qualified can be as elusive as what constitutes true motive. Most employment decisions would have been good candidates for court review because most employment decisions could be presumed discriminatory no matter which person was selected.[2]

In the instant case, plaintiff presupposes that defendant harbored discriminatory antipathy or bias and waited for an opportunity to discriminate against him. It allegedly determined that it could take adverse action against plaintiff for two reasons -- both seemingly legitimate, but one of which could not pass muster under the McDonnell Douglas test.[3] Knowing this, the

---

[2] One would assume that everyone would agree that all persons in our political community are entitled to or deserving of not being subjected to discrimination. In that regard, a wrong decision by a court on the issue of "best qualified" or "true motive" creates just as much societal and individual harm as when the employer makes a wrong decision. The harm to society occurs because the court has now assumed the role as the arbitrary and capricious decision-maker. Second, when proof of motive becomes less certain or erratic, employees will begin to view most or all employment decisions as being tainted when the opposite is likely true, thereby promoting distrust, dissatisfaction, and unrest. Wrong decisions finding a person to be a victim of discrimination harm other individual employees, equally deserving protection from discrimination, who are thereby kept from the job, promotion, etc.

[3] The Court only deems for purposes of this motion that failure to close job orders constitutes a legitimate, non-discriminatory reason. The issue is not now
(continued...)

employer chose the reason which would not reveal its discriminatory bias.

This speculative and rather imaginative hypothetical, while perhaps possible, seeks to extend the McDonnell Douglas test way beyond its tenuous validity, and certainly beyond its efficacy. It piles speculation upon speculation and completely ignores the fact that good grounds (see n.3) exist for the adverse employment action in the first place. The function of anti-discrimination laws is to prohibit and correct intentional discriminatory actions, not thoughts, desires, or wishes. It may well be that a person harboring bias may wait for an opportunity to act on a legitimate, non-discriminatory reason to take adverse action. Nevertheless, in that case, the motive for the actual action taken remains non-discriminatory, however much bias or antipathy the employer may harbor in general. Anti-discrimination laws become counter-productive if they serve to protect the incompetent or negligent. Even in the situation where the employer's initial reason is discriminatory, but later the employer advances a non-discriminatory reason for its action, the remedy against the employer is limited. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).

For these reasons, assuming the employer had two potential reasons for disciplining him, plaintiff fails to show that the employer discriminated against him by picking a non-discriminatory

---

[3](...continued)
before the Court and plaintiff may show otherwise.

reason for firing him, as opposed to picking a reason which might provide an inference of discriminatory intent. There is no basis in law or logic for allowing a plaintiff to scour his employment records for possible disciplinary infractions which, if adopted by the employer, would give rise to discriminatory intent and then impose those reasons upon the employer. That is the essence of what plaintiff is attempting to do here. For this reason, the motion to compel will be denied.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel discovery (docket no. 9) is denied.

**IT IS FURTHER ORDERED** that defendant's motion for a protective order (docket no. 12) is denied for being moot.

/s/ Russell A. Eliason
**United States Magistrate Judge**

July 14, 2005