IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


GEORGE HOLTZ,                        )
                                     )
      Plaintiff,                     )
                                     )
      v.                             )      1:04CV00827
                                     )
JEFFERSON SMURFIT CORPORATION,       )
doing business as Stone              )
Container Corporation,               )
doing business as Smurfit-Stone      )
Container Corporation,               )
                                     )
      Defendant.                     )


<u>MEMORANDUM OPINION and ORDER</u>


OSTEEN, District Judge


      Plaintiff George Holtz ("Plaintiff") filed this action

against Defendant Jefferson Smurfit Corporation ("Defendant")

alleging violations of the Age Discrimination in Employment Act

of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 <u>et seq.</u>, the

Employee Retirement Income Security Act of 1974 ("ERISA"), as

amended, 29 U.S.C. §§ 1001 <u>et seq.</u>, and North Carolina public

policy.  Before this court are the following motions, including

responses and replies:  (1) Plaintiff's Motion for

Reconsideration of 10/24/2005 Minute Entry; (2) Plaintiff's

Motion to Strike Supplemental Affidavit of Jim Seel and Portions

of Defendant's Reply Brief; (3) Plaintiff's Motion to Strike

Portions of Defendant's Supplemental Brief in Support of

Defendant's Motion for Summary Judgment; (4) Defendant's Motion to Strike and Exclude from Evidence Portions of Affidavit of George Holtz and Plaintiff's Exhibits 49 and 59; and (5) Defendant's Motion for Summary Judgment. For the reasons stated below, the court will grant Plaintiff's Motion to Strike Portions of Defendant's Supplemental Brief in Support of Defendant's Motion for Summary Judgment, will deny Plaintiff's remaining motions, and will grant Defendant's Motion for Summary Judgment. Defendant's motion to strike is denied as moot.

## I.    FACTUAL BACKGROUND

Plaintiff began working for Defendant during 1986 in an Illinois-based plant. Defendant is a manufacturer of paperboard and paper-based packaging, including, for example, tissue boxes. In November 1995, Defendant transferred Plaintiff to its Greensboro plant to the position of Finishing Manager. Defendant's primary customer for the Greensboro plant was Kimberly-Clark, a manufacturer of personal-hygiene products. The Greensboro plant would print and assemble boxes for Kimberly-Clark's products. Jim Seel ("Seel"), during 1996, became the General Manager of the Greensboro plant. Seel chose Plaintiff to fill a vacant Plant Manager position on May 1, 1999. Randy Hearn formerly held the position. Because he failed to perform adequately as Plant Manager, he was relocated to the corporate offices.

2

As Plant Manager, Plaintiff was responsible for the plant's overall performance. Seel and members of a "steering team" had management control as well. Members of the steering team included Plaintiff, Dave Smith (Quality Manager), Linda Panther (Warehouse Manager), and Betty Blackwell, who Rodney Thompson later replaced (Finishing Department Manager). Plaintiff was the immediate supervisor to Smith, Panther, Blackwell, and Thompson. The entire plant, moreover, was under Plaintiff's supervision, and for most plant problems, "[t]he buck stop[ped] with [Plaintiff]." (Holtz Dep. at 118.) Thus, Plaintiff was responsible for the lower managers' performance.

During his first years as Plant Manager, Plaintiff decreased spoilage, which is a measure of how much product is wasted in the box manufacturing process. As a result, in 2000, the Greensboro plant reached record profits. Thus, in the initial years, Plaintiff's performance was more than satisfactory to Defendant.

During October 2002, Defendant began to expand its Kimberly-Clark orders by making boxes for feminine-care products. This expansion caused changes at the plant. Employees had to be trained for new types of boxes, and labor and equipment costs increased. The finishing department also had old equipment that did not run at full capacity. Furthermore, Defendant's agreement limited Kimberly-Clark's costs and required new capital

3

investment to prepare for the feminine-care products, both of
which negatively affected Defendant's profits.

In late 2002 onward, Plaintiff's performance began to
decline. Defendant started receiving an increasing number of
complaints from Kimberly-Clark about quality issues, some of
which were substantial. In one incident during 2003, at least
250,000 cartons of material had to be reprocessed, causing
Defendant to incur excessive overtime and other costs. (Holtz
Dep. at 57.) Plaintiff alleges other quality control problems
were much less severe, but they, nonetheless, still occurred.
These escalated during the first quarter of 2003. Dave Smith
received at least some of Kimberly-Clark's complaints, and
Plaintiff addressed the complaints that Smith relayed. Plaintiff
blames his inability to address problems on Smith, who did not
inform Plaintiff of all of Kimberly-Clark's complaints.

On March 26, 2003, Plaintiff's last employee evaluation
occurred. (Seel Dep. Ex. 4.) This review was overall favorable,
which was consistent with Plaintiff's past performance reviews.
Seel states this evaluation covered the entire preceding year,
and Plaintiff's work during that entire year warranted a
favorable review. Plaintiff's deposition asserts Seel gave
Plaintiff no indication of displeasure with his work (Holtz Dep.
at 105), but Seel noted, however, in Plaintiff's review that

> [a]lthough the plant performed very well thro[ugh]
> 2002, performance in the first quarter of 2003 has been

4

poor as a result of poor planning, mainten[ance,] and training in the [F]inishing [D]epartment. The Finishing Department Manager has now been demoted to a shift supervisor[,] and [Plaintiff] has begun rebuilding the department[;] however the slownes[s] to react and failure to recognize the magnitude of the problems ha[ve] been severely detrimental to the profitability and credibility of the plant. Improvements in spoilage and performance over the last year were reversed during the past [six] months.

(Id.) Thus, Plaintiff's review indicated a number of problems Plaintiff should investigate and ameliorate as Plant Manager.

In March through April 2003, quality continued to drop significantly. Daily problems with Kimberly-Clark's products occurred, and quality complaints increased throughout 2003's second quarter. Defendant's employees constantly fixed defectively manufactured boxes, which Plaintiff admits drove up costs. (See Holtz Dep. at 54.) The plant lost over $230,000 in the first two quarters of 2003. During this period, Plaintiff was also to "rebuild[] the Finishing Department by training operators, repairing equipment, [and] installing [a] quality control scanner," none of which occurred. (Def.'s Mem. Supp. Mot. Summ. J. at 5.) On June 7, 2003, Plaintiff failed to ensure proper management coverage on a weekend, which was his responsibility.

Mike Weisheit, vice president and regional general manager for Defendant, Dave Pietrowicz, and Dan Nolan, a division engineer, visited the Greensboro plant several times from mid-April through June 2003. In mid-May 2003, Weisheit and Nolan

noted Plaintiff never installed new equipment in the Finishing Department. In early June, Weisheit and Pietrowicz noted Defendant's warehouse was in disarray by having more bad product than good, which they blamed on Plaintiff and Linda Panther, the warehouse manager. Weisheit did not speak to Plaintiff about this matter, and no one took action against Panther. Plaintiff had received, however, numerous other verbal and written informal warnings, including emails, about his deficiencies.

On July 9, 2003, Seel told Plaintiff that he was being removed as Plant Manager because of his failure to close out orders.[1] From a meeting on July 14, 2004, among Seel, Weisheit, and Plaintiff, and a letter on that same day from Seel, Plaintiff learned that "[a]s a result of your continuing poor performance as Plant Manager as evidenced by the lack of control of spoilage, closing of orders, cost improvements, equipment maintenance, and administrative organization of the production group, you are being removed from your position as Plant Manager." (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. Ex. 20.) No other steering committee members, all of whom were individually responsible for some of these problems and all of whom were younger than Plaintiff, received disciplinary actions.

_____

[1] Closing out an order means the client's order was fully shipped with satisfactory product.

Defendant took two separate employment actions against Plaintiff. Defendant first placed Plaintiff as a Process Improvement Technician with the Stroud Consulting Group ("Stroud") in the Greensboro plant until September 15, 2003. Stroud was a separate entity from Defendant, but apparently, Plaintiff still worked for Defendant in this position. At the end of that period, Defendant would reassess Defendant's need for Plaintiff and Plaintiff's overall performance. The evaluation never occurred, and Stroud terminated its Greensboro project around early September 2003 to start a project in Valley Forge, Pennsylvania. Plaintiff did not go to Valley Forge, and Defendant then terminated Plaintiff's employment as the Stroud position was gone and no further positions existed for Plaintiff. Plaintiff's replacement was Tom Elphick, who was younger than Plaintiff.

Plaintiff contends Defendant's employment actions against him differed from its employment actions taken against other steering team members who failed to perform, including Randy Hearn, Betty Blackwell, Ed Dieter, Scott Headley, and Jeff Kyber. Plaintiff also contends the method through which he learned of his deficiencies differed from what younger employees, such as Tom Coggin, received. Coggin received formal, written warnings.

Plaintiff points to two other key facts that establish his various claims: (1) Defendant's ERISA retirement plan and (2)

7

Seel's statements to Plaintiff about his age.  Defendant, throughout the relevant periods, maintained an ERISA retirement plan for the employees.  The benefit amount depended on, among other factors, the employee's length of service.  Plaintiff inquired many times about his benefit amount if he were to retire.  His last inquiry was in January 2003.  He received a response around May 29, 2003, from Tracy Parrish, the human resources manager.  Plaintiff remarked that the amount was not enough for him to live on if he were to retire.  Parrish laughed at the comment.

Plaintiff also alleges Seel made age-related comments during these periods.  The first statement occurred sometime in August or September 2002.  Seel told Plaintiff the Greensboro plant would possibly be reorganized, and either Seel or Plaintiff would lose his position in Greensboro, which could include Plaintiff relocating to a facility outside of Greensboro.  When Plaintiff stated, "I'll leave Greensboro, you know.  I don't care.  I'll move," Seel told Plaintiff, "You're old enough to retire so you don't have to worry about it."  (Holtz Dep. 94-95.)  Plaintiff also asserts in his brief opposing Defendant's motion for summary judgment that Seel stated, "There you go, [Plaintiff], you can get the senior discount."  (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 16.)

Another statement occurred sometime during August or September 2002. Plaintiff stated to Seel after attending a management meeting, "That [meeting] was boring as hell. I almost fell asleep." (Holtz Dep. at 222.) Seel replied, "You're just getting too old for this stuff." (Id.)

Two statements occurred early in 2003. Seel stepped into Plaintiff's office and stated, "You have to do something with that tee because we're getting—we're both getting too old for this bullshit."[2] (Id.) In a separate statement, Seel and Plaintiff were trying to resolve a problem with a certain printing machine. Plaintiff was working underneath machinery and became quite dirty. Seel, upon seeing Plaintiff, stated Plaintiff was too old to be climbing under the machines. Finally, Seel asked Plaintiff if he were going to retire and leave Seel stuck in the Greensboro factory by himself. From these facts, Plaintiff derives his ADEA, ERISA, and state law claims.

---

[2] "Tee" refers to Holtz's side business marketing a special type of golf tee that he invented. Seel worked for Plaintiff in the business, but Seel later quit. Plaintiff expended a fair amount of work on the business, which prompted Seel's comment that both Plaintiff and he were getting too old for that much work. The side business did not interfere with Plaintiff's work at Defendant's plant.

## II.  ANALYSIS

A.  Plaintiff's Motion for Reconsideration of 10/20/2005
    Minute Entry

Plaintiff moves this court to reconsider a minute entry on

the docket sheet made pursuant to U.S. Magistrate Judge Eliason's

oral order.  The text of the entry, taken from this court's

electronic docket sheet, is as follows:

> Minute Entry for proceedings held before Judge RUSSELL
> A. ELIASON:  Motion Hearing held on 10/20/2005 re 17
> MOTION for Protective Order filed by JEFFERSON SMURFIT
> CORPORATION.  The Motion for Protective Order (#17) is
> granted in part, and denied in part as stated in open
> court.  Plaintiff's Response and Motion in Limine
> (pldg. #19) is denied.  (Court Reporter Jane Calhoun.)
> (Williamson, Wanda) (Entered: 10/20/2005).

Plaintiff's argument is that in a prior order, Judge Eliason

stated, within that order's confines, Defendant's only

justification for firing Plaintiff was his failure to close out

orders timely.  <u>See</u> Order of 7/14/2005.  Plaintiff now argues the

10/20/2005 minute entry should reflect Judge Eliason's statement

within his 7/14/2005 order.  This limitation is also what

Plaintiff sought in his motion in limine, which Judge Eliason

denied in the 10/20/2005 order.  Thus, Plaintiff wants this court

to grant the motion in limine that Judge Eliason denied.

A district judge "shall modify or set aside any portion of

the magistrate judge's order [on a nondispositive matter] found

to be clearly erroneous or contrary to law."  Fed. R. Civ. P.

72(a).  Plaintiff, while not arguing under this standard, states

10

the "law of this case" is that Defendant is limited in the justifications he may proffer for Plaintiff's termination. "Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Arizona v. California</u>, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391 (1983). "Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." <u>Id.</u> at 619 n.8, 103 S. Ct. at 1391 n.8. For this analysis, this court will assume this rule applies to Judge Eliason's 7/14/2005 order.

Plaintiff argues that in the 7/14/2005 order, Judge Eliason ruled Plaintiff could not obtain the financial records he sought because Defendant has not asserted Plaintiff created a large financial loss that justified his termination. Defendant argued against Plaintiff's request because it did not keep the records Plaintiff sought, the request was too burdensome, and the request was somewhat arbitrary in its limits. Judge Eliason agreed, but also added Defendant has not argued multiple reasons for Plaintiff's termination; it argued only one—the failure to close out orders.

11

On October 20, 2005, Judge Eliason ruled on Defendant's
Second Protective Order Motion.  In that ruling, Judge Eliason
denied, in part, Defendant's Motion for a Protective Order.  As a
result, Defendant had to produce certain financial statements.
Judge Eliason also denied Plaintiff's Motion in Limine, in which
Plaintiff sought to bar Defendant from introducing other
justifications for termination other than failure to close
orders.

From these descriptions, it appears Judge Eliason changed
his opinion on whether Defendant had proffered one reason or many
reasons for Plaintiff's termination.  Defendant has asserted
multiple reasons for Plaintiff's termination throughout this
litigation; thus, Judge Eliason may have decided his first
statement in the 7/14/2005 order was clearly erroneous.  This
court is not in a position to rule on the propriety of Judge
Eliason's October ruling, however, because Plaintiff has provided
no evidence of what the actual ruling was, other than his
description, even though a court reporter recorded Judge
Eliason's oral order.  Nevertheless, Defendant asserts Plaintiff
caused financial losses to the plant, and Plaintiff has received
some evidence of Defendant's finances during Plaintiff's
employment as Plant Manager, even though the evidence was limited
from Plaintiff's initial overbroad discovery request.  Plaintiff,
thus, has evidence to argue against Defendant's justification for

12

termination.  With no clear error appearing, this court has no

justification to reconsider Judge Eliason's ruling.

    B.    Plaintiff's Motion to Strike Supplemental Affidavit of
          Jim Seel and Portions of Defendant's Reply Brief

    In this motion, Plaintiff seeks to strike parts of

Defendant's reply brief and a supporting affidavit.  Plaintiff

argues Defendant's reply brief does not comport with Local Rule

7.3(h), which provides that "[a] reply brief is limited to

discussion of matters newly raised in the response."  Plaintiff

makes three arguments for why Defendant's reply is improper:  (1)

many sections of the reply and its supporting affidavit are

simply the principal brief rehashed; (2) Defendant argues against

Plaintiff's ERISA cause of action, which was not explicitly

present in the original brief; and (3) the supporting affidavits

bolster much of the original brief and not the reply and, thus,

are improperly present in the reply.

    As to the first and third reasons, Plaintiff points to

nothing in the reply that would be prejudicial if it remains and

Plaintiff cannot respond to it.  Thus, the court will not engage

in detailed and lengthy analysis of the reply to see what

language and evidence are and are not redundant because Plaintiff

shows nothing is new and not already available for Plaintiff's

response.  The court's effort would be futile.

    As to the second reason, the court agrees Defendant's

original brief did not address summary judgment on the ERISA

13

cause of action, and the court was surprised that Plaintiff, instead of arguing that Defendant waived argument on that point, addressed the ERISA claim in his brief. Plaintiff, however, stated in his responsive brief that Defendant's principal brief implies that its arguments against the ADEA claim apply to the ERISA claim. Plaintiff then argued against summary judgment on the ERISA claim. Since Plaintiff raised the argument in his responsive documents, Defendant's reply that addressed summary judgment on the ERISA claim was in response to a newly raised matter, which comports with Local Rule 7.3(h). For these reasons, Plaintiff's motion will be denied.

     C.    Plaintiff's Motion to Strike Portions of Defendant's Supplemental Brief in Support of Defendant's Motion for Summary Judgment

Plaintiff moves this court to strike pages 23 through 24 of Defendant's supplemental brief. Defendant initially filed a brief for summary judgment, and later sought leave to file additional pages to that brief. This court allowed the supplemental brief but stated Defendant was limited to extending arguments already set forth in the principal brief.

On pages 23 through 24, Defendant presented arguments for summary judgment on Plaintiff's ERISA and North Carolina public policy claims. Defendant presented neither of these in the original brief; thus, these arguments are outside the scope of what Defendant could submit in a supplemental brief. Plaintiff

14

only contests the ERISA arguments.  Thus, this court will strike
those portions of the supplemental brief that deal with
Plaintiff's ERISA claim and not consider them for the summary
judgment motion.

    D.   Defendant's Motion for Summary Judgment

    Plaintiff made four separate claims against Defendant:  (1)
age discrimination through wrongful termination; (2) age
discrimination through a wrongful transfer; (3) age
discrimination in violation of the ERISA; and (4) discharge in
violation of North Carolina public policy.  The court considers
the first and second claims together, while considering the
remaining claims in turn.

    1.   Standard of Review

    Summary judgment is appropriate where an examination of the
pleadings, affidavits, and other proper discovery materials
before the court demonstrates that there is no genuine issue of
material fact, thus entitling the moving party to judgment as a
matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  If the
moving party has met that burden, then the nonmoving party must
persuade the court that a genuine issue does not remain for
trial.

> When the moving party has carried its burden under Rule
> 56(c), its opponent must do more than simply show that
> there is some metaphysical doubt as to the material
> facts.  In the language of the Rule, the nonmoving

party must come forward with "specific facts showing
that there is a <u>genuine issue for trial</u>."

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

586–87, 106 S. Ct. 1348, 1356 (1986) (citations & footnote

omitted) (quoting Fed. R. Civ. P. 56). The court must view the

facts in the light most favorable to the nonmovant, drawing

inferences favorable to that party if such inferences are

reasonable. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255,

106 S. Ct. 2505, 2513 (1986). However, there must be more than a

factual dispute; the fact in question must be material, and the

dispute must be genuine. Fed. R. Civ. P. 56(c); <u>Anderson</u>, 477

U.S. at 248, 106 S. Ct. at 2510. A dispute is only "genuine" if

"the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." 477 U.S. at 248, 106 S. Ct. at

2510.

    2.   Plaintiff's Claims

        i.   Age Discrimination Through Wrongful
            Termination and Transfer

Plaintiff first claims Defendant transferred him to Stroud

and eventually terminated him, both in violation of 29 U.S.C.

§ 623(a)(1), which provides "[i]t shall be unlawful for an

employer . . . to discharge . . . or otherwise discriminate

against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such

individual's age." In proving such a claim, Plaintiff must

16

either state a case of direct discrimination or satisfy the
requirements of the burden-shifting formula established in
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817
(1973), which applies to age discrimination cases, see, e.g.,
King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). In the
following, the same analysis applies to the wrongful transfer and
wrongful termination claims except where otherwise noted.

> a. Direct Evidence of Discrimination

Plaintiff claims six separate age-related comments allegedly
show age discrimination. In proving discriminatory motive with
direct evidence of the employer's statements, "[t]he alleged
discriminatory statements [must] . . . directly relate[] to a[]
particular person, employment decision[,] or pattern of
decisionmaking." EEOC v. Clay Printing Co., 955 F.2d 936, 941
(4th Cir. 1992). Thus, Plaintiff must show a connection between
the discriminatory comments and the employer's action. Id. at
942 (holding that a "nexus [must] exist[] between the alleged
discriminatory statements and any of the employment decisions").

To be direct evidence of discrimination, the statement must
be more than a fact of life that has "no disparaging undertones."
Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir.
1994). In Birkbeck, the employer stated that "there comes a time
when we have to make way for younger people." Id. at 511. The
Fourth Circuit held this statement was not direct evidence of age

17

discrimination because it was merely a fact of life with no disparaging undertones. Id. at 512. Thus, "the statement in itself create[d] no inference of age bias" and simply reflected the truth that eventually younger employees will replace the older ones. Id. Moreover, the employer's agent who made the statement was protected under the ADEA as well,[3] and the court noted, in that factual situation, such statements are merely "non-actionable reflection[s] on generational passage." Id.

Plaintiff's allegations about Seel's statements are all similar to the statement in Birkbeck. In one statement, Seel told Plaintiff a possibility existed that the Greensboro plant would be reorganized, and either Seel or Plaintiff would lose his position in Greensboro. This could have included Plaintiff relocating to a facility outside of Greensboro. Seel told Plaintiff, after Plaintiff stated, "I'll leave Greensboro, you know. I don't care. I'll move," that "[y]ou're old enough to retire so you don't have to worry about it." (Holtz Dep. 94–95.) Plaintiff asserts Seel also stated, "There you go, [Plaintiff], you can get the senior discount." (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 16.)[4] These statements reflect no more than a

_____

    [3] That is, the person is at least forty years old. 29 U.S.C. § 631(a).

    [4] Plaintiff does not point to support from the depositions or affidavits, see L.R.56.1(d) (stating that, if filed, a responsive brief that asserts a genuine issue of material fact
(continued...)

18

fact of life and have no disparaging undertones.  Plaintiff does

not dispute that he was old enough to retire or entitled to a

senior discount; he only states these statements show age

discrimination.  The statements simply have no disparaging

undertones and, standing alone, show no inference of age

discrimination.

Plaintiff's other complaints are also not direct evidence of

age discrimination.  In one incident, Plaintiff told Seel, "That

[meeting] was boring as hell.  I almost fell asleep." (Holtz

Dep. at 222.)  Seel replied, "You're just getting too old for

this stuff."  (<u>Id.</u>)  Later, Seel stepped into Plaintiff's office

and stated, "[W]e're both getting too old for this bullshit."

(<u>Id.</u>)  In another incident, Plaintiff was working underneath

machinery and became quite dirty.  Seel, upon seeing Plaintiff,

stated Plaintiff was too old to be climbing under machinery.

Finally, Plaintiff asserts Seel asked Plaintiff if he were going

to retire and leave Seel stuck in the Greensboro factory by

himself.  Plaintiff asserts these comments stand for themselves

and need no further explanation as to how they show age

discrimination.

---

[4](...continued)
exists, must "point to specific, authenticated facts existing in
the record or set forth in accompanying affidavits that show a
genuine issue of material fact"), the court will accept this
statement as properly supported because it will not affect the
analysis.

In these statements, Seel, who was about seven years younger than Plaintiff, who was around sixty years old, and protected by the ADEA, simply noted to Plaintiff a generational passing: the truism that people gradually get too old to do some tasks. Seel simply noted Plaintiff may be getting too old for the longer meetings or the manual labor or working the machines. Even though Seel specifically directed these statements to Plaintiff, the statements are still generic references to a fact of life, and do not contain any disparaging undertones. Moreover, the closeness in age of Seel and Plaintiff reinforces that these were innocuous statements, and Plaintiff does not show how these statements have a nexus to the ultimate employment action (the transfer and the firing). Plaintiff fails, as a matter of law, to show direct evidence of age discrimination because his evidence consists of generalized statements about aging, which do not show a connection to the ultimate employment action taken.

        b.    Burden-Shifting Proof of Discrimination

Under the test established under McDonnell Douglas, Plaintiff must prove the following elements to set out a prima facie case of discrimination: "(1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations"; and (4) that the employer

20

treated a younger employee more favorably.  <u>King</u>, 328 F.3d at

149.  Plaintiff must "prov[e] a set of facts [that] would enable

the fact-finder to conclude, in the absence of any further

explanation, that it is more likely than not that the adverse

employment action was the product of discrimination."  <u>Ennis v.

National Ass'n of Bus. & Educ. Radio, Inc.</u>, 53 F.3d 55, 58 (4th

Cir. 1995).  At issue are the third and fourth elements.

     Once a plaintiff proves a prima facie case, then a defendant

has the burden "to articulate some legitimate, nondiscriminatory

reason" for the action against the employee.  <u>McDonnell Douglas</u>,

411 U.S. at 802, 93 S. Ct. at 1824.  "If the defendant is

successful in carrying this burden, the plaintiff must

demonstrate by a preponderance of the evidence that defendant's

reasons were a pretext for discrimination."  <u>Clay Printing</u>, 955

F.2d at 941.  This court finds Plaintiff fails to prove a prima

facie case because Plaintiff provides insufficient evidence that

he met Defendant's legitimate expectations or that Defendant

treated younger employees more favorably by applying the

expectations in a discriminatory manner.  Thus, further analysis

is unnecessary.

     A court, in analyzing an employee's performance in relation

to the reasonable expectations, focuses on the employee's

performance at the time the employment action occurred; thus,

summary judgment for the employer is appropriate where poor job

performance at the time of employment action is only contradicted
by evidence the employee performed well in the past.  See Peele
v. Country Mut. Ins. Co., 288 F.3d 319, 328-29 (7th Cir. 2002).
In Peele, the employer repeatedly warned the employee about work
deficiencies occurring over an eighteen-month period prior to the
employment action.  Id. at 328.  The employee had otherwise
received raises and favorable reviews for the eight-year period
she worked.  Id. at 329.

The Seventh Circuit held that summary judgment was
appropriate because the evidence of poor performance was only
contradicted by evidence that the employee performed well in the
past.  See id. at 328-29.  The court reasoned that the
dispositive inquiry was the job performance when the employment
action occurred, and evidence the employee performed well in the
past cannot trump the undisputed evidence of poor job performance
at the time of the employment action.  See id.

Defendant presents an array of deficiencies in Plaintiff's
performance, which are detailed in the factual statement of this
opinion.  Plaintiff counters Defendant's evidence with the
following facts:  (1) Plaintiff received excellent employee
evaluations during his first few years as Plant Manager; (2)
Plaintiff lowered spoilage during his first few years; (3) under
Plaintiff's management, the plant reached record profits during
the first few years; (4) his last employee evaluation stated he

22

was meeting the employer's expectations; (5) the July 9, 2003, statement that Plaintiff's failing to close tickets is incredible because no customer complained to Defendant about receiving orders in time; and (6) the alleged downfall occurred contemporaneously with Seel's age-related comments. The first through third reasons are clearly Plaintiff alleging he met Defendant's legitimate expectations because he has a past record of favorable employment. As reasoned in Peele, such evidence does not trump evidence of an employee's other failings at the time of employment action.

The fourth justification is also similar to those in Peele. Plaintiff asserts that evidence shows he met Defendant's reasonable expectation because his last review was favorable. What Plaintiff does not explain is his last review occurred on March 26, 2003. (Seel Dep. Ex. 4.) Seel's uncontradicted testimony is the evaluation covered the entire preceding year, and Plaintiff's work during that entire year warranted a favorable review. (Id. at 61 ("I felt at that time his evaluation for the entire previous year should be that [Plaintiff met employer's expectations].").) That same employee evaluation noted several of Plaintiff's deficiencies, including Plaintiff's "slownes[s] to react and failure to recognize the magnitude of the problems[, which] ha[ve] been severely detrimental to the profitability and credibility of the plant. Improvements in

23

spoilage and performance over the last year were reversed during the past [six] months." (Id. Ex. 4.)  This evidence is no more than that in Peele; it shows Plaintiff did well in the past, but it does not contradict the evidence that Plaintiff's performance did not meet Defendant's reasonable expectations at the time of employment action, which occurred several months after the review.

Plaintiff's assertion that no customers complained about orders is without merit.  The depositions of Seel, Dave Smith, and Tracy Parrish have many references to the complaints Defendant received from its primary customer Kimberly-Clark about bad product, and thus, not getting its order in a timely fashion.

Finally, Plaintiff's allegation that the alleged downfall coincides with Seel's age-related comments is without merit.  Though the court is uncertain of the point of this argument, Plaintiff apparently argues that because Seel's comments show age discrimination and bias by Defendant, the alleged downfall must be fabricated.  As noted above, those comments were no more than innocuous statements with no disparaging overtones.  Thus, Plaintiff has not shown he was meeting Defendant's reasonable employment expectations.  Plaintiff unconvincingly counters Defendant's undisputed facts of Plaintiff's failing with evidence that Plaintiff performed well prior to the time the employment actions occurred.

Plaintiff further asserts that Defendant administered the employment expectations in a discriminatory fashion because Defendant terminated Plaintiff.[5]  When a party makes this claim, that party may still establish a prima facie case even if he did not meet the employer's legitimate expectations by "show[ing] that there is someone who is directly comparable to h[im] in all material respects" except age and that person received more favorable treatment.  Peele, 288 F.3d at 329-30 (first alteration in original) (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)).  "In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case."  Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000).

"[I]n disciplinary cases—in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason—a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct."  Id.  Furthermore, the employee must generally show the same decisionmaker made the disparate employment decisions.  See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994) ("When different decision-makers are involved, two decisions are rarely 'similarly situated

---

[5]  Thus, this analysis applies only to the claim that Plaintiff's termination violated the ADEA.

25

in all relevant respects.'"). "Thus, to be deemed 'similarly-situated[,'] the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

Plaintiff asserts each of these parties is similarly situated to Plaintiff. Plaintiff, however, proffers insufficient evidence to show these younger employees were actually similarly situated.

- Randy Hearn was Plant Manager in Greensboro before Plaintiff. Defendant removed Hearn for "performance issues," and, instead of firing him, Defendant moved Hearn to its corporate office. (Pl.'s Mem. Law Supp. Br. Opp'n Mot. Summ. J. at 20.)

- Betty Blackwell was a Finishing Department Manager in Greensboro under Plaintiff, removed from that job for performance problems, but not fired.

- Linda Panther was Warehouse Manager in Greensboro during Plaintiff's employment. Panther was reprimanded for warehouse problems, as was Plaintiff. Plaintiff claims Panther did not address her deficiencies, and Defendant did not fire her.

- Rodney Thompson was Finishing Department Manager in Greensboro after Betty Blackwell. Many of the finishing problems alleged against Plaintiff were also Thompson's fault, but Defendant took no action against him.

- Dave Smith was Quality Manager in Greensboro during the relevant time. Plaintiff claims no employment action

26

occurred against Smith, who was as at fault as he for
the Kimberly-Clark complaints. Smith did not bring all
complaints to Plaintiff's attention.

- Jim Seel, Plaintiff's supervisor, was also responsible
  for Defendant's problems, and never received employment
  action.

- Tom Coggin, another steering committee member in
  Greensboro, had performance issues but was not
  terminated. Plaintiff further alleges that Coggin
  received his disciplinary warnings on letterhead, which
  Plaintiff claims shows an established warning system
  that Defendant never applied to Plaintiff.

- Ed Dieter, a Plant Manager for Defendant in its Carol
  Stream Plant in Illinois, was fired for performance
  issues. After additional education, Defendant rehired
  him. No such offer was made to Plaintiff.

- Scott Headley was a Plant Manager at Defendant's Carol
  Stream Plant in Illinois. Defendant removed Headley
  from this position into a Service Manager position.

Plaintiff alleges these facts show Defendant never fired

poor performing members that were younger than Plaintiff, yet

Defendant fired Plaintiff. What Plaintiff does not explain is

how these people were similarly situated in all material respects

to Plaintiff. Most of these people were not plant managers.

Plaintiff's descriptions show these people did not have a series

of performance problems similar to Plaintiff's. See Rohde v.

K.O. Steel Castings, Inc., 649 F.2d 317, 322 (5th Cir. 1981)

(noting that, in analysis of comparable employees, "[w]hat is

relevant is that two employees are involved in or accused of the

same offense and are disciplined in different ways" (emphasis

added)). Plaintiff simply fails to produce evidence that these

27

people were younger but otherwise similarly situated to Plaintiff in all material aspects.  Plaintiff fails to make a prima facie case that Defendant administered the legitimate expectations in a discriminatory fashion.

Thus, Plaintiff's claim that Defendant wrongfully transferred him to Stroud fails as a matter of law because Plaintiff was not performing at Defendant's reasonable expectations.  Plaintiff's claim that Defendant wrongfully terminated him fails as a matter of law because (1) Plaintiff was not performing at Defendant's reasonable expectations, and (2) no evidence shows Defendant's firing was a different result than that applied to younger but otherwise similarly situated employees.  This court cannot allow a case to go before the fact-finder when the undisputed facts show nothing more than an employer making a business judgment to fire the head person, instead of lower managers, when a series of failings occurred. Such a claim is not actionable under the ADEA.  See Clay Printing, 955 F.2d at 946 ("It is not for this court . . . to direct the business practices of any company."); Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986) (noting that federal courts "do[] not sit as a super-personnel department that reexamines an entity's business decisions").

28

ii.  Age Discrimination in Violation of ERISA

Plaintiff next claims Defendant terminated him for the specific purpose of denying him his ERISA rights, a cause of action under ERISA § 510, 29 U.S.C. § 1140.  That section provides it is "unlawful for any person to discharge . . . a participant . . . for exercising any right to which he is entitled under . . . an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."  29 U.S.C. § 1140.

This section creates a cause of action for "[t]hose employees waiting to vest in a qualified pension plan . . . against an employer who discharges them for the purpose of blocking their vesting in the company's pension plan." Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 236 (4th Cir. 1991).  "[T]o take advantage of § 510, one must prove a specific intent of the employer to interfere with an employee's pension rights."  Id. at 239.  The employee may prove specific intent using direct evidence or the McDonnell Douglas burden-shifting scheme.  Id.  Under that scheme, Plaintiff must show that he was in the protected class (within the group qualified for the ERISA plan), was qualified for his position, and was fired under circumstances that give rise to an inference of discrimination (or a specific intent to interfere with his

29

vesting rights).  <u>See</u> <u>Henson v. Liggett Group, Inc.</u>, 61 F.3d 270,

277 (4th Cir. 1995).  Plaintiff proffers direct evidence and

evidence for the burden-shifting scheme.

a.    Direct Evidence

Plaintiff's direct evidence fails to show an intent to

deprive him of his ERISA benefits.  Plaintiff claims two pieces

of evidence show the intent.  First, Plaintiff requested

estimates of retirement benefits.  Tracy Parrish provided such

information.  When Plaintiff received an estimate in May 2003, he

stated he could not afford to live on that amount, and Parrish

laughed at his statement.  Second, Seel remarked that if

Plaintiff retired, Seel would be stuck alone at the plant.

Plaintiff reasons that because these events occurred somewhat

contemporaneously with the downfall of his performance, these two

slim pieces of evidence show specific intent to deprive Plaintiff

of ERISA benefits.  The evidence only shows a remark or reaction

to a present state of affairs.  Plaintiff's direct evidence is

simply insufficient to show an intent to deprive.

b.    Burden-Shifting Evidence

Plaintiff's claim fails under the <u>McDonnell Douglas</u> formula

as well.  Plaintiff asserts he was a member of the protected

class, performed his job adequately, and the timing of Seel's and

Parrish's comments with his downward performance prove a prima

facie case.  As discussed above, Plaintiff has not established a

30

prima facie case because he cannot show he performed at his employer's legitimate expectations. Moreover, Plaintiff's evidence of Seel's and Parrish's comments do not show circumstances that give rise to an inference of discrimination. This claim fails as a matter of law.

### iii. Age Discrimination in Violation of North Carolina Public Policy

Plaintiff finally claims that under N.C. General Statute section 143-422.2, his employer wrongfully terminated him because of his age. Section 143-422.2 provides: "It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain[,] and hold employment without discrimination or abridgement on account of . . . age . . . by employers [that] regularly employ 15 or more employees."

Plaintiff bases this claim on the age discrimination established by his ADEA claims. As previously discussed, those claims fail as a matter of law. Thus, this claim fails as a matter of law. <u>See</u> <u>Henson</u>, 61 F.3d at 277 (noting that North Carolina applies ADEA evidentiary standards to such claims and holding when "plaintiff relies upon the same evidence to support her state law claim for age discrimination . . . as she did in the ADEA context, the district court correctly grant[s] summary judgment . . . on [the] state law claim").

31

## III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Plaintiff's Motion for Reconsideration of 10/24/2005 Minute Entry [36] is DENIED, Plaintiff's Motion to Strike Supplemental Affidavit of Jim Seel and Portions of Defendant's Reply Brief [38] is DENIED, and Plaintiff's Motion to Strike Portions of Defendant's Supplemental Brief in Support of Defendant's Motion for Summary Judgment [48] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [20] is GRANTED. Because this court granted summary judgment, Defendant's Motion to Strike and Exclude from Evidence Portions of Affidavit of George Holtz and Plaintiff's Exhibits 49 and 59 [30] is DENIED as moot. A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 4th day of January 2006.


United States District Judge